May it please the court, my name is Wayne Young. I represent Mr. Perdomo, Espana. There are three issues in this appeal. The one raised by Mr. Perdomo is the Rule 11 issue. The two raised by the government have to do with the two sentencing departures. On the Rule 11 issue, looking at the record as a whole, as Vaughan instructs us we must, the argument is this. Mr. Perdomo reasonably believed that his priors would not be used against him at sentencing. And that belief starts from his original change of plea where his attorney refuses to allow him to admit the priors because they are not an element of the crime. Well, let's just make sure we understand each other. Being a Vaughan survivor, I know the case quite well. You have to persuade us not only that this was something that the judge was required to inform him, but also that in fact he was misled by not being told. Because otherwise it becomes harmless. If, for example, his lawyer explained this all to him, the fact that he didn't get told by the judge doesn't make much of a difference. And my point is looking at the record as a whole, and I'm not sure I agree that I have to persuade you that gets to that plain error versus harmless error and whether or not there was a sufficient objection. There clearly wasn't. Judge, I object to this change of plea on Rule 11 grounds, but my argument would be. Let's even put away the, put aside for the time being the plain error issue. Let's assume there was some sort of objection. The problem with these cases, they always come up as as as almost always come up as plain error, because if you the lawyer reminds the judge about it, often the judge will say, OK, well, if you want me to do it here, I'll tell you what you want to hear. Why not, you know, give an additional warning. So so usually the reason it happens is defense lawyer doesn't raise objection. Sometimes doesn't raise objection because he forgets. Sometimes doesn't raise objection because it's nice to trap the judge into an error. You might get another bite on appeal. Right. So we don't know what happened here. Putting that aside, the totality of the circumstances of this case could have led Mr. Carney refused to allow him originally to admit it. He makes a motion to strike those priors. And the court eventually agrees with him that they shouldn't have been alleged and they are stricken from the indictments that he ultimately pleads to. Now, I think the biggest obstacle I have is the fact that the court issued a written order that said these priors can be used against you. We're going to strike him from the indictment. The anomaly here is that it was a written order that followed the hearing. Had the judge said that at the hearing, I'm making my decision and they're going to be used against you, then he clearly would have been on notice. But because it's a written order, can we presume that he was informed of that? The order wasn't served on him. It was served on his counsel. So that's a bit ambiguous. But then we get to the actual change of plea. And the morning of the change of plea, the government serves a new indictment from which those priors have been redacted. And there's really no talk of the priors at all in the change of plea. And, in fact, the judge asked him, are you pleading to the limited offense of 1326? And, again, if he's of this mind that I've now successfully stricken the priors from this case, and the judge seems to acknowledge that by saying, and you're pleading to the limited offense of 1326, and he says yes, and there's no discussion by the prosecutor, by the court, that at the change of plea or at any time, on the record, to him, that he, those priors are going to be used against him. Then the question turns to is, well, what, where does that obligation come from, that the court should inform him of that? Does it come from Rule 11? Does it come from the Due Process Clause? And the key here seems to be the nature of the charge requirement of Rule 11. It seems to be expanding. And the nature of the charge now includes not only elements, but things that are functional equivalent of elements. And because of Alamondaris-Torres, priors are kind of an anomaly. They're not elements, but they're certainly the functional equivalent of it because of their dramatic impact on sentencing. You go from a guideline sentence of 10 to 16 months, whatever it was, to 77 to 83. A four or five increase in sentence because of these prior convictions that have been alleged. The priors actually raise a new cap. And they increase the guideline level dramatically. I understand the and. They do two things. Yes. They take the cap from 2 to 20. 2 to 20. So that is a statutory trigger. I'm sorry, a statutory? Trigger. Yes, it is. It's a statutory triggering event that changes the maximum from 2 to 20. And under Apprendi, it would clearly be. But it's the same crime. It's not a different crime. It's the same crime, but the maximum changes. It is the same crime, being an illegal immigrant subsequent to deportation. But this element of being an illegal element subsequent to deportation following prior convictions. You know, the problem is, is Almondyris Torres and now Pacheco Cepeda saying that Almondyris is still good law. Is it an element or not an element? And either it's Minori or Pena. One of the recent cases says, you know, we're no longer going to be hung up on that distinction between elements and sentencing factors. What we're going to look at are, are these facts in some way causing a dramatic impact? That was a drug case where it had to be presented to the jury and proved beyond a reasonable doubt, correct? Yes. And that's the distinction, Your Honor. In this case, of course, he was told what his maximum penalty would be, right? He was told it would be 20 years. 20 years. And that's the clue to him. But on the other hand, those priorities are stricken. He might be pleading to something that when it all goes down, he might be pleading to, he's pleading to something that could net him 20 years, right? That's what he's told. Well, yes. That is what he's told, that he's pleading to something. He's pleading to a crime and he can get 20 years for it. And, of course, that's always subject to a zillion contingencies. You know, what's your criminal history? What, one thing, what's your criminal history? Do judges have to tell people about their criminal history? They do not, Your Honor. And I think that's in a way another anomaly, and that's a good point. This is part of his criminal history, isn't it? So he might get, he knows he's pleading to this offense. There's been a big firefight through this case about whether you have to plead at that point and whether you need to charge the priors. And it's all decided, no, you don't. He just pleads the offense and he might get 20 years for it. He knows that, right? He's told that. Now, whether he understands. Wait a minute. He's told that and he says he understands that, correct? He might get 20 years. Is that true? Yes. But whether he understands that a maximum of 20 years means that these priors are going to be used against him is a separate question. Well, he may not know that his prior history in general convenes against him, or that after they talk to him they might find out that he has X or Y enhancement. We don't know that. Well, part of the problem with my argument is, you know, given a bank robber with eight priors, there's no requirement that those priors be, that the judge tell him before sentencing or at the change of plea, that those priors are going to be used to increase your sentence by whatever measure they do. But in this case, the priors are used in two ways. They're used horizontally in criminal history, but they're also used vertically. And my point is, because of the dramatic impact, and especially on the actual sentence, you know, telling someone what his maximum is in the modern guideline era is relatively unimportant information. What's important is, is there a mandatory minimum, and what's important is what the guideline range is going to be. Now, one of the problems might be, well, how far does this go, Mr. Young? Does the judge have to do a pre-plea report in which we, you know, analyze? You know, that was actually going to be my next question. I'm not kidding. I mean, it's sort of compelling when you put this here, but there's all sorts of things that make a difference in sentencing. And if you take your argument all the way, it pretty much says, you know, you pretty much have to do sort of a pre-calculation. Perhaps not a bad practice. They do it in state court all the time. But my point... So the worst case scenario pre-calculation, sentencing guidelines calculation saying, here's the worst you could suffer given what we know about you. Right. Exactly. What happens when you discover something else even worse that you didn't know? And that happens. Probation officers and prosecutors come up with a guideline, no matter how experienced you are, that you didn't anticipate and you didn't tell your client about it. But that may be a two-level enhancement. But I'm not arguing here that all defendants in all cases in which priors are going to be used, 1326 cases, that they're going to be used to dramatically increase your sentence, they have to be told that. I'm just saying this defendant, because of this history, this unusual history, of the battle between he and the prosecutor and the judge about these priors, he needed to be told it at his change of plate, because he never was before. Look, Mr. Perdomo was... Well, the judge did ask if he had discussed the sentencing guidelines and all the factors and such that might go into the sentencing calculation with his counsel, and he said he had. He did, Your Honor. Why isn't the district court entitled to rely on the representation and to rely on counsel who went through all of this screwy process, too, to have informed his client accurately about his prospects? I just think because of this history and this case alone... I understand. But counsel was there from day one, too. And the district court, although this judge was there from day one, doesn't have to be. It could have been sentenced by somebody else. So are they supposed to be really clever, William? I just think, again, in this case, because it was the focus of a six-month battle, and he now appeared to finally win, and he shows up, and the indictment has the priors redacted, the court, and because of their dramatic impact. That's the other thing. This isn't a two-point enhancement or a four-point enhancement. This quadruples his sentencing, his real sentence, under the guidelines. I think you have to inform him about that. And there seems to be, in some other cases I'm aware of, when you have these unusual circumstances, the better practice, certainly, is to make sure that the defendant understands about it. And when you look at Minore and Pena, and they are drug cases, and that's the big distinction because at Almondara's Puris, priors are an anomaly. But I don't think that anomaly should apply to this. There's a reason for the anomaly, and it is that if you allege priors in the indictment in all cases, it prejudices them. And that's why they're not elements. But it doesn't pertain to a judge. The judge is going to be able to separate them out. So for this fellow, just looking at the whole thing, when the judge finally says to him, you're pleading for the limited offense of 1326, he reasonably believes that those priors weren't going to be used against him. That's the argument. So what is your remedy? I mean, what are you looking for here? Setting aside the plea or? Certainly setting aside the plea. The more interesting issue, and I didn't really have to brief it as well as I should have, is, is he entitled to a two-year lid when he goes back to sentencing? That was certainly the argument that Ms. Jenis made in the district court. And my presumption was that that possibility was removed by Pacheco-Cepeda, which seemed to say no. But Pena goes back a little bit. If Pena, which was just decided, I think, about a week ago, they go back and say, now you are limited to the underlying statutory maximum, which is two years. So, you know, that would obviously be the optimal solution for my client. But at minimum, he's entitled to go back and start off at square one, having the plea vacated. But. OK. You've got five minutes and 20 seconds. On the two sentencing issues, just on the acceptance of responsibility, there's two reasons I think he's entitled to get that. One is the judge essentially, I don't want to say promised to him, but suggested to him that you're going to get it. You know, right at the change of plea, she said, even if we go to, we pick the jury and then you decide to plead guilty, I'm still going to give you credit or I'm still going to consider credit for acceptance of responsibility. Now, the question Mr. Kinmay raises, well, is it two points or three points? We don't know. But certainly a reasonable defendant hearing that would think that there's a strong suggestion that I'm going to get the third point. But more importantly, had he been allowed to plead guilty when he wanted to at the beginning and the judge subsequently admitted that the court erroneously prevented him from doing that, he would have gotten the three points without a doubt. So you put those two things together. I think on the third point, whether under abuse of discretion or de novo review, he should get the third points. If the Patriot Act, I'm sorry, the Protect Act does apply now at sentencing, on the medical issue, it would have been a much stronger point for the defense on abuse of discretion standard. You know, it's one that could have gone either way. As Mr. Kin points out, even their own experts said this isn't the most severe type of diabetes, but the judge was closest to it, had abundant medical records. There was not only diabetes and depression, and the court made the call. Under an abuse of discretion standard, I think it would have stood. But under de novo review, it's certainly an open question. That's the best I can say on that. Thank you. Thank you. May it please the Court. I'm Assistant United States Attorney Curtis Kin. I represent the government who is the appellee in the cross-appellant in this action. Turning first to the defendant's appeal with respect to the Rule 11 violations, there simply was no plain error. With respect to whether convictions would be used at sentencing, the defendant has not proven here that there was any requirement whatsoever that by Rule 11 that the defendant be advised that convictions would be used at sentencing. Moreover, in this particular case, the record bears out the fact that even if there were such a requirement, this defendant in fact did know that the convictions would be used against him. With respect to the alleged Rule 11d violation, we believe that Jimenez-Dominguez is on all fours here. Not surprisingly, in fact, it involved the same district court judge, his colloquy, as was here, and she used the same, I think, as the court in Jimenez-Dominguez called it, scrupulous compliance with Rule 11, as was used here. And the plea colloquy, although not to the letter of asking whether there were discussions with the government, that plea colloquy certainly would have uncovered, and there were none, by the way, agreements with the government, but the plea colloquy here certainly would have uncovered any understandings that the defendant may have had with respect to promises or inducements or threats by the government. And so I believe that the Rule 11 was complied with here in both respects. Turning to the government's cross-appeal with respect to timely acceptance, the law is unambiguous here that the acceptance of responsibility is not timely if either the prosecution was substantially prepared for trial. How do we review this? What's the standard of review? Your Honor, we believe that the standard of review with respect to the timely acceptance issue still is clear error under TMPL. We do not believe that the Protect Act changes that for this cross-appeal. I mean, this is clear error, right? That is correct. So. And while it is a very deferential standard of review, nonetheless, we are here. I can't think of any that's more deferential than clear error. Quite possibly, Your Honor. However, I believe there is clear error here. As I was beginning, it was, did the prosecution substantially prepare for trial? That absolutely could have been, was the case here. There were other factors going on. There was uncertainty as to a legal issue. And so this was not a case where he held out and he held out sort of letting the prosecution go ahead and prepare. He was, there were legal issues in dispute, which, if resolved in his favor, would have changed the legal environment. And in fact, did to some extent change the legal environment. And so he had perfectly good reason for holding out. It wasn't just sort of stringing the prosecution along. Why under clear error standard? Isn't that the kind of decision that solvers can look at? Your Honor, I have to respectfully disagree with the factual assumption there. Five months earlier, the defendant did try to plead guilty. And even assuming that the legal wrangling and the back-and-forth could excuse the late guilty plea, as of November 13th of 2000, more than two months prior to trial commencing, the defendant was put on notice by the district court that, look, you may now plead guilty to the very indictment you were earlier trying to plead to, and I am striking any reference to the aggravated felony convictions which you no longer have to plead to. What is very telling is then what the defendant did in those following two months. The defendant did not plead guilty, not then, not until the first day of trial. And in the intervening period, when he could have had everything that he had earlier wanted, instead, the defendant, in fact, sought and obtained a continuance of the trial date so that he could prepare. In fact, in the stipulation prepared by the defendant. Why does it reset the time, though? I'm sorry, Your Honor? Why does it reset the time? The defendant comes in five minutes before or five months before and says, I'm ready to plead guilty. Here's my timely notice to you. I'm ready to plead guilty. The prosecution and the trial court foul up and won't allow him to plead. So six months, four months later, they say, well, now we'll let you plead guilty, and then he takes another month or two to accept that. Your Honor. Why does it reset the time? It resets the time. He gave them timely notice. It says here, timely notifying the authority of his intention to enter a plea of guilty, thereby permitting the government. He did just that and he permitted the government. The government turned him down. In this case, Your Honor, the clock is reset because of what the defendant did after he had the opportunity to plead guilty. He unequivocally withdrew that previously timely notice, if that's what the court wants to deem it. What he did then is make every effort to indicate to the court and to the prosecution that he was going to proceed to trial, and, in fact, he did. Not only did he file numerous pleadings for trial, in fact, in a fairly simple case, this defendant fought quite vigorously with respect to numerous cases. Is there a case that says, when a defendant says, I'm guilty, I did it all, I'm a bad man, I'll plead guilty right now today, and they turn to them, just turn down flat on a thumb theory, is there a case that says, well, when they change their mind later on, he then has X amount of time to replead guilty, or else he doesn't get the third point? Is there any case on that? No, Your Honor. We could find no case that tells us either way whether that timely notice goes on forever or whether it can be withdrawn. And yet you want to argue clear error. Yes, Your Honor. But we believe it was clear error, because if the defendant can earlier say, I want to timely plead guilty, yet in the two months prior to trial do everything to indicate that he is going, that he is not going to plead guilty, that he's going to proceed to trial, thereby causing both the court and the prosecution to waste its resources in preparing for trial, which really is the point for timely acceptance of responsibility. Was the superseding indictment actually filed on the first day at trial? No, Your Honor. The first superseding indictment, which alleged the aggravated felonies, was filed back in, I believe, the Supreme. The redacted indictment, Your Honor? Yes. Well, as a factual matter, actually, the government did not file the redacted superseding indictment. That was filed by the defense in order to present it to the jury so that the felony convictions would not be given to the jury when it went back. Well, it's my understanding that that indictment didn't actually surface thoroughly until the day in which he pled guilty. Is that wrong? I believe that's wrong, Your Honor. Because he would have been arraigned on the first superseding indictment quite a bit longer. I don't have the record in front of me, but I believe he was, at which point, obviously he was. Well, that's just my impression, which adds to the difficulty of saying it was clear error. I mean, one may or may not have done the same thing, but the district court found that the delay was caused by screw-ups. So it's hard to say, it seems to me, that that – that I'm firmly convinced that that's wrong. Yes, Your Honor, I understand. But I believe in this case, given the fact that he forced both the court and the government to go to substantial trial preparations, that there would be clear error. Moreover, on the very day of trial, as the site in our reply brief, the full colloquy between the district court and the defendant, Judge Snyder does a fairly thorough job of explaining what had happened in the case so far and concludes with the question to the defendant, do you plan to go to trial based on all of this? And the answer is yes. Then after that, the defendant files a motion to dismiss the indictment, and then for several hours thereafter, the defendant proceeds to go forward with his trial, meaning fighting motions in limine, arguing over jury instructions, objecting to the evidence that the government would present at trial. While Judge Fernandez is quite correct, there is no case stating that once timely notice is given, it can never be, that it can or cannot be withdrawn. Here, this has to be the case. There could be no later guilty plea. There were no resources saved by both the judiciary or the prosecution here, and that is exactly the purpose of the timely acceptance responsibility reduction. How do we review the other valid departure? Yes. Turning to the extraordinary physical impairment, it is the government's belief that the PROTECT Act applies here. I checked the docket sheet as of last Thursday afternoon. It's not clear to me that the government's supplemental brief, although received by the Court, was officially filed here. I'm assuming that it was. No? I'm — Not to me, but it wasn't filed.  I would say it is the government's position that, pursuant to the PROTECT Act, the standard now is de novo. Although the Court should give due deference to the Court's findings of fact, the applications of the guidelines to the fact is de novo. I believe the PROTECT Act was effective April 30th of this year. Using the analysis by the Supreme Court and Landgraf, we believe that the PROTECT Act does apply to cases pending on appeal, which is this case here. In Landgraf, the Court recognized the very longstanding principle that the Court should apply the law in effect at the time of rendering its decision. That would be the PROTECT Act here, unless the law is retroactive. And we do not believe that the PROTECT Act, changed in the standard of review, fits the definition of a retroactive statute as defined by Landgraf. Here, it is clear that the change in the law is merely a change in the standard of review. It does not increase the punishment or change the punishment or change the crime that the defendant had of the defendant's conduct before. In fact, it is merely a procedural rule. And as Landgraf, the Supreme Court, notes in that case, changes in procedural rules do not raise retroactivity concerns as a general matter. Let's say we disagree with you on that. And let's say the PROTECT Act doesn't apply. Does apply, Your Honor? Does not. Does not. Okay. Just for sake of discussion. I understand your argument, if it does. What, then, is the standard of review? What, then, would be the standard of review? I think, as we pointed out in our earlier briefs prior to the passage of the PROTECT Act, that Kuhn would control and it would be an abuse of discretion as opposed to the earlier articulation of the standard of review in Martinez-Ferreira. You know, I'm not sure. Do you think Kuhn applies? We believe so, Your Honor. Well, pre-PROTECT Act, if the PROTECT does not apply, we believe that Kuhn was the general. This is the – Kuhn dealt with an unguided departure. It was one of those departures that is not covered by the guidelines, whereas this is a – at least a partially guided departure, so there is actual law to apply. We have statutory guidance that says it has to be an extraordinary condition. That's a term in the statute, and it seems to me that limits and guides the discretion of the court, unlike the Kuhn kind of situation where, you know, sort of a never-never land. But – so it was not clear to me that Kuhn applies, but if it's a government position that it does, maybe that's all that needs to be said. Your Honor, as we stated in our original opposition brief, we believe that Kuhn would apply if the PROTECT Act does not. So we're either looking at an abuse of discretion or we believe that it is a de novo standard under the PROTECT Act. Under either standard, however, we believe that the district court decision must be overturned here. Extraordinary physical impairments, as I believe the defense also acknowledges, is not ordinarily relevant to the sentencing and is, in fact, a discouraged factor. This district court did error here. The district court's ruling, in fact, was quite vague. It was only that the defendant was having certain problems because of his diabetes, that he had a difficult time, and therefore, his case was outside the heartland. If one evaluates the record supporting these findings, if one can even call them specific findings by the district court, the record clearly does not support any such findings. It's undisputed here that it was the onus of the defendant and his burden to prove that he had an extraordinary physical impairment. That was not done here. In fact, all the defendant did was submit 71 pages of articles concerning diabetes generally, which didn't have nothing to do with this defendant's particular condition. And, in fact, actually proves the opposite point, because in those articles, it talks about the severe problems that could result from diabetes, which the defendant did not have, and therefore, shows that he probably was not outside the heartland or was not. In fact, the only thing relevant to the defendant's actual condition was the expert report of his own doctor, who said, quote, there's no documented evidence of the presence of any diabetic complications, and that although the defendant had subjective complaints, that nonetheless, there was still no objective findings to support the diagnosis. Of course, the defendant is going to be in prison for a long time, and diabetes tends to get worse over time. And the district court can't go back and reconsider the sentence. Correct, Your Honor. And 10 years down the road, when the guy is really suffering and whatnot, so isn't this the kind of thing, at least if we're reviewing under abusive discretion, isn't this the kind of judgment the district court could make, a long-sentence, deteriorating condition, the kind of condition that may not be so bad today, but in 5 or 10 years, it will make things much worse for him? Possibly, Your Honor. I would concede that the district court could use discretion to look down the road based on the record before it, but there's an abusive discretion here because there's nothing to support the finding that down the road, 10 years, 8 years, 1 year, that this defendant was going to have complications relating from diabetes that either did at the time sentencing or would result in the existence of an extraordinary physical impairment. In fact, the record teaches quite the opposite. In fact, defendant's own expert says that the defendant was doing quite well under the care of the Bureau of Prisons. And by the way, the care of the Bureau of Prisons was rather noninvasive and quite minimal, meaning that change in diet, oral medications and counseling already had what the defendant's doctor described as a significant positive response and an excellent response to the effectiveness of the prescribed therapy. So here we have a record actually telling us that under the care of the government and the Bureau of Prisons. He's better off in prison. He is better off in prison, if you will, Your Honor. But certainly there is no extraordinary physical impairment. I think he should appeal for an upward departure just to get the benefit of all this. Perhaps, Your Honor. Unless the Court has any further questions, I would submit. One quick thing. Yes, sir. In your briefs, it was indicated that the settlement that you all tried to work out was still on the table and that we, for reasons that aren't entirely clear to me, but maybe are clear enough that it might have been done procedurally, clumsily by the parties, we turned down. I think you said it was still on the table. Is something like that still going on, or is this, you know? Correct, Your Honor. The government decided to leave that offer on the table because prior to the filings of any briefs, in order to save both resources on both sides as well as that of the courts, we had agreed that that would be a fair disposition, although the government believed it was giving up something quite substantial in terms of the departure argument. Nonetheless, when we submitted this for approval by the court of appeals, it was rejected for reasons quite unclear to us. The government at that time decided, well, we will leave that out there because the defendant, through no fault of his own, did not get the benefit of his bargain, so that still remains out here, although I believe, based on the cover letter I received from appellants or defendant, when he submitted his opening brief, that he is no longer interested in such a disposition. Thank you. Thank you, Your Honor. Mr. Kidd brought up the Jimenez-Dominguez case and compared it to this case and says it's basically on all fours. The distinction in Jimenez-Dominguez is that this court found that it was a minor or technical violation and it didn't affect his substantial rights. The minor or technical violation was to not ask whether there had been prior discussions between the government and his counsel. The distinction here between Jimenez-Dominguez is it's not a minor or technical violation. It's a substantial violation if he didn't know that these priors are going to be used against him. So it really did affect. It's not what Jimenez-Dominguez is on all fours about. It's about an offer. Any discussion about offers or promises. Right. That 11d, the second part of 11d. And this Court held that even though it applies, it's distinguishable from this on not having disclosed the priors also? No. I'm just saying it's distinguishable because there were substantial rights of the defendant at issue here. Whereas in Jimenez-Dominguez, the court the point would be the same because the point is that having asked the defendant whether there were any promises that induced his plea and the defendant says no, then there aren't any. That's all. No matter what they were about. I mean, it could have been about the moon being green cheese. It doesn't matter. And that question wasn't asked in Jimenez-Dominguez. And it was asked here, too. Were there any promises? No. The question that was not asked was, was there any discussion, the second part of 11d. No. Were there any discussions between the government? I understand that. But the point is, he was asked in both cases whether there were any promises. Yes. That is, by anybody, which would include even the government. That's correct. That induced the plea, to which the answer in both cases was no. No promises, but there was a judge that redacted those priors from the indictment and said you're going to plead guilty to the limited offense of 1326. And my last point is, especially in a case this is important where there's no plea agreement. When there's plea agreements now, they set forth base offense level, specific offense, you know, plus 16 because of prior convictions. It's all laid out. So a defendant's hard pressed to say that a plea agreement that he signed, he wasn't aware of it. But because there's no plea agreement in this case, along with that whole procedural history once again, that's the argument. Is the government correct in guessing that defense is not interested in the so-called settlement that's on the table? Yes, Your Honor. We tried. And once it was rejected for reasons that apparently were not clear to all of us, we withdrew it. Okay. So that's just gone. Yes. Okay. Thank you. Okay. Thank you. The case is argued with 10 submittals.
judges: Kozinski, Fernandez, Rymer